## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:03-cr-48 |
| | ) | Civil Action No. 1:16-cv-812 |
| CUONG GIA LE | ) | |

### MEMORANDUM OPINION

Defendant, by counsel, has filed a motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct two of the sentences imposed on him a decade ago on the ground that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), operates to invalidate his convictions for two counts of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). At issue on the government's motion to dismiss is whether defendant's § 2255 motion is untimely pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f). Also at issue, assuming defendant's § 2255 motion is timely, is whether *Johnson* operates to invalidate defendant's two § 924(c) convictions. As the matter has been fully briefed, it is now ripe for disposition.

### I.

On October 8, 2004, defendant pled guilty to various counts charged against him in the Fifth Superseding Indictment ("Indictment"), all of which arose from defendant's involvement as a member of a criminal enterprise or gang consisting primarily of Vietnamese youth.[1] Specifically, defendant pled guilty to the following counts charged against him in the Indictment:

---

[1] A thorough recitation of the facts is recorded in *United States v. Cuong Gia Le*, 310 F. Supp.2d 763, 768-72 (E.D. Va. 2004).

(i) engaging in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962 (Count 1);

(ii) conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Count 6);

(iii) murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Counts 8 and 9);

(iv) attempted murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Count 10);

(v) assault with a dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Count 12);

(v) conspiracy to affect commerce by robbery, in violation of 18 U.S.C. § 1951 (Count 14);

(vi) using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Counts 26 and 27).

Accordingly, on October 8, 2014, defendant received the following sentences:

(i) life imprisonment for Counts 1, 8, and 9, to run concurrently with each other;

(ii) 120 months' imprisonment for Counts 6 and 10, to run concurrently with each other and with the previous sentences;

(iii) 36 months' imprisonment for Count 12, to run concurrently with the previous sentences;

(iv) 240 months' imprisonment for Count 14, to run concurrently with the previous sentences; and

(v) life imprisonment for Counts 26 and 27, to run consecutively to each other and with the previous sentences.

At issue here are Counts 26 and 27, the two counts of using a firearm in relation to a crime of violence, in violation of § 924(c).

Pursuant to § 924(c), a defendant who "during and in relation to any crime of violence ... uses or carries a firearm ... shall, in addition to the punishment provided for such crime of violence ... if the firearm is brandished, be sentenced to a term of imprisonment of not less than

7 years," and "[i]n the case of a second or subsequent conviction under [§ 924(c)], the person shall ... be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C. § 924(c)(1). In order to prove a violation of § 924(c), the government must establish: (1) that the defendant possessed and brandished a firearm; and (2) that he did so during and in relation to a crime of violence. *United States v. Strayhorn*, 743 F.3d 917, 922 (4th Cir. 2014). Under 18 U.S.C. § 924(c)(3), a "crime of violence" is any felony:

> (A) [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* Subsection (A) and subsection (B) of § 924(c)(3) are commonly referred to as the "force clause" and the "residual clause" respectively.

Defendant's two convictions pursuant to § 924(c) were predicated on numerous crimes of violence, including murder in aid of racketeering activity, in violation of § 1959, where the underlying conduct was murder, in violation of Va. Code § 18.2-32.

On June 26, 2015, more than a decade after defendant's sentence was imposed, the Supreme Court issued its decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), addressing the definition of "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). Specifically, the Supreme Court in *Johnson* held that the ACCA residual clause—the provision that defines a "violent felony" to include an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)—is unconstitutionally vague, and therefore that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 2563. Thereafter, on April 18, 2016, the Supreme Court held that *Johnson* announced a

new "substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On June 27, 2016, shortly after the Supreme Court's decision in *Welch*, defendant filed a motion pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct the sentences imposed on him for his two convictions pursuant to § 924(c) on the ground that the Supreme Court's decision in *Johnson* operates to invalidate these convictions. Specifically, defendant contends that the residual clause of § 924(c) is indistinguishable from the ACCA residual clause, and accordingly, the residual clause of § 924(c) is unconstitutionally vague pursuant to the rationale of *Johnson*.

On July 12, 2016, the government filed a motion to dismiss defendant's § 2255 motion on the ground that collateral review of defendant's sentence or conviction is untimely pursuant to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f).

## II.

The government's motion to dismiss raises a threshold issue as to whether defendant's § 2255 motion is timely. Because defendant filed his § 2255 motion approximately a decade after his sentences of conviction and judgment became final, his § 2255 motion would typically be barred by the one-year limitations period set forth in 28 U.S.C. § 2255(f)(1). Yet, defendant contends that his § 2255 motion is timely because pursuant to 28 U.S.C. § 2255(f)(3), the limitations period runs from June 26, 2015, the date *Johnson* was decided.[2] In this regard, § 2255(f)(3) provides that a one-year limitations period runs from "the date on which the right

---

[2] Although defendant's § 2255 motion was filed on June 27, 2016, it is considered to be within one year of the Supreme Court's June 26, 2015 decision in *Johnson* because the one-year anniversary of that decision occurred on a weekend; June 27, 2016 was the first Monday after that weekend.

4

asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.*[3]

The Fourth Circuit has explained that "to obtain the benefit of the limitations period stated in § 2255(f)(3), [a movant] must show: (1) that the Supreme Court recognized a new right; (2) that the right 'has been … made retroactively applicable to cases on collateral review'; and (3) that [the movant] filed his motion within one year of the date on which the Supreme Court recognized the right." *United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012) (quoting § 2255(f)(3)). Importantly, however, there is a question as to the meaning of the term "right" as used in § 2255(f)(3). As neither the Supreme Court nor the Fourth Circuit has grappled with this question,[4] it is appropriate, indeed necessary, to do so here.

The Supreme Court has made clear that when interpreting a statute, "the starting point … is the language itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). In this regard, it is axiomatic that "[i]f the statutory language is plain," a court "must enforce it according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015). At the same time, the Supreme Court has recently explained that statutory interpretation properly proceeds "with reference to the statutory context, 'structure, history, and purpose,' " as well as "common sense." *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014) (quoting *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013)). Thus, "although the analysis properly focuses on the text, the

---

[3] *See also Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (explaining that the § 2255(f)(3) limitation period runs from the date on which the Supreme Court recognizes the new right, not the date on which the new right was "made retroactive[]").

[4] Indeed, the Fourth Circuit has made clear that it "ha[s] not yet had occasion to establish a framework for determining, under [§ 2255(f)(3)], whether and when a Supreme Court decision constitutes the initial recognition of a 'newly recognized' right." *United States v. Hopkins*, 268 F.3d 222, 224-25 (4th Cir. 2001).

analysis is not necessarily limited to the text." *Angiotech Pharms. Inc. v. Lee*, --- F. Supp.3d ---, No. 1:15-cv-1673, 2016 WL 3248352, at *9 (E.D. Va. June 8, 2016).

## A.

Statutory analysis of § 2255(f)(3) properly begins with the text and the "fundamental" principle that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). In this regard, the term "right" as used in § 2255(f)(3) is generally understood to refer to a legally protected interest that one may claim against another.[5] Yet, it has long been recognized that the term "right" is ambiguous;[6] depending on the context, for example, a right can be framed broadly or narrowly. *See, e.g., Washington v. Glucksberg*, 521 U.S. 702, 719-21 (1997) (cautioning that courts must articulate fundamental rights narrowly in the substantive due process context). As relevant here, the term "right" in § 2255(f)(3) could refer (i) to the right asserted by defendant not to be incarcerated pursuant to § 924(c) in light of *Johnson*, or (ii) the broader principle underlying *Johnson* that due process requires fair notice of prohibited conduct.

---

[5] *See, e.g., Webster's Third New International Dictionary* 1955 (1993) (defining "right" as "something that one may properly claim"); *Black's Law Dictionary* 1517 (10th ed. 2014) (defining "right" as " [a] legally enforceable claim that another will do or will not do a given act; a recognized and protected interest the violation of which is wrong ... .").

[6] Indeed, in an effort to remedy the "indiscriminate use of the term 'right,' " Wesley Newcomb Hohfeld developed a well-known taxonomy of the incidents of that term. *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L. J. 16, 31 (1913). Specifically, Hohfeld explained, *inter alia*, that a "right" can take various forms, including: (i) a "privilege" to do something unaccompanied by a duty to do that thing (*e.g.*, a right to walk freely in the park), (ii) a "claim" against another who has a duty to the right-holder (*e.g.*, a contractual obligation), (iii) a "power" of a superior to alter the rights of his subordinates (*e.g.*, a ship captain's authority vis-à-vis his deckhands), (iv) an "immunity" of a subordinate not to have his rights altered by a superior (*e.g.*, a citizen's individual right vis-à-vis his government). *See id.* at 30-54. That the term "right" can take so many different forms confirms the ambiguity of that term.

The choice between these alternatives is significant here. If "right" refers to a broad principle rather than a narrow application of that principle to a specific statute, then the "right" on which defendant relies is not "newly recognized," as § 2255(f)(3) requires, and therefore defendant cannot avail himself of § 2255(f)(3)'s limitations period. This is so because the broad principle at issue in *Johnson*—the Due Process Clause's requirement of fair notice of prohibited conduct—is hardly new. Indeed, the Supreme Court noted in *Johnson* that "[t]he prohibition of vagueness in criminal statutes is a well-recognized requirement." *Johnson*, 135 S. Ct. at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979)). Thus, the ambiguity as to the scope of the term "right" in § 2255(f)(3) must be resolved.

To that end, it is appropriate to turn to § 2255(f)(3)'s historical context. In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, § 104, 110 Stat. 1214 (1996), which amended the law of habeas corpus in various ways, such as the enactment of the statute of limitations scheme set forth in § 2255(f). Importantly, the AEDPA was enacted in 1996 against a background of pre-existing Supreme Court habeas doctrine, including the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), which established the circumstances in which a Supreme Court decision applies retroactively to cases on collateral review. Specifically, the Supreme Court in *Teague* held that "a case announces a new rule" for the purpose of retroactive application only "if the result was not dictated by precedent existing at the time when defendant's conviction became final." *Id.* at 301. Such a "new rule" applies retroactively to cases on collateral review only if the rule (i) places certain kinds of private, primary individual conduct beyond the power of the criminal law authority to proscribe or (ii) is a watershed rule of criminal procedure. *Id.* at 311.

7

There can be no doubt that Congress was aware of the *Teague* framework when it enacted the AEDPA in 1996, as (i) *Teague* was—and is—the leading case on the non-retroactivity doctrine,[7] (ii) *Teague* was an interpretation of the very statutory scheme Congress amended with the AEDPA,[8] (iii) several provisions of the AEDPA contain language that tracks the *Teague* framework,[9] and (iv) the legislative history refers to the principles of habeas retroactivity on collateral review.[10] Thus, the *Teague* framework sheds light on Congress's choice of language in § 2255(f)(3). Indeed, the language of § 2255 incorporates the *Teague* framework in some respects and deviates from that framework in other respects. Of particular relevance here, § 2255(f)(3) specifically incorporates the *Teague* framework insofar as that provision refers to Supreme Court decisions that have been "made retroactively applicable to cases on collateral review," but § 2255(f)(3) deviates from the language of *Teague* insofar as

---

[7] Indeed, a survey of Supreme Court case law reveals that by 1996, the Supreme Court had already cited *Teague* in over 50 Supreme Court decisions. *See, e.g., Harris v. Reed*, 109 S. Ct. 1038, 1047 (1989); *Holland v. Illinois*, 110 S. Ct. 803, 810 (1990); *McCleskey v. Zant*, 111 S. Ct. 1454, 1468 (1991); *Rufo v. Inmates of Suffolk Cnty. Jail*, 112 S. Ct. 748, 772 (1992); *Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993); *Schiro v. Farley*, 114 S. Ct. 783, 788 (1994); *Goeke v. Branch*, 115 S. Ct. 1275, 1275 (1995).

[8] *See Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (noting that *Teague* was a decision based on statutory interpretation).

[9] *See, e.g.*, 28 U.S.C. § 2255(h)(2) ("a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court"); 28 U.S.C. § 2254(e)(2)(A)(i) ("a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court").

[10] *See, e.g.*, H.R. Rep. 104-23, 1995 WL 56412, at *9 (Feb. 8, 1995) (noting that the § 2255 limitations period "preserv[es] the availability of review when … the United States Supreme Court recognizes a new right that is retroactively applicable").

§ 2255(f)(3) refers to a newly recognized "*right*" rather than a "new *rule*," the term used by the Supreme Court in *Teague* and its progeny.[11]

There are compelling reasons to think Congress deliberately selected the term "right" in § 2255(f)(3) as a deviation from the *Teague* framework. For one, other provisions enacted as part of the AEDPA directly incorporate the relevant language of *Teague*. Section 2255(h)(2), for example, stands in stark contrast to the language of § 2255(f)(3), as § 2255(h)(2) provides that "[a] second or successive motion must be certified ... by [an appellate panel] to contain ... a new *rule* of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." *Id.* (emphasis added). Similarly, 28 U.S.C. § 2254(e)(2)(A)(i) provides that in the context of a § 2254 petition, a court may hold an evidentiary hearing if the petitioner's claim is premised on "a new *rule* of constitutional law, made retroactive to cases on collateral review by the Supreme Court." *Id.* (emphasis added). Importantly, where provisions of the same statute use different terms, it is presumed "that the enacting legislature meant those terms to have at least slightly different meanings." Caleb Nelson, *Statutory Interpretation* 88 (2011).[12] Thus, because Congress employed the term "rule" in clear reference to the *Teague* framework in other provisions of the AEDPA, there is good reason to think the term "right" in § 2255(f)(3) means something else.

That Congress intended for § 2255(f)(3) to deviate in certain respects from the *Teague* framework finds further support in another phrase of that provision. Specifically, a qualifying

---

[11] *See, e.g., Teague,* 489 U.S. at 301 (referring to a "new rule"); *Stringer v. Black,* 503 U.S. 222, 227 (1992) (repeatedly referring to a "new rule" when applying the *Teague* framework).

[12] This presumption is a corollary to the well-settled "presumption of consistent usage," Nelson, *supra*, at 88, which the Supreme Court has recently characterized as a "rule of thumb that a term generally means the same thing each time it is used." *United States v. Castleman,* 134 S. Ct. 1405, 1417 (2014).

"right" under § 2255(f)(3) must have been "recognized *by the Supreme Court.*" *Id.* (emphasis added). In other words, § 2255(f)(3) applies only where the Supreme Court—rather than a lower court—has recognized a new right. By contrast, under the *Teague* framework existing at the time the AEDPA was enacted, a lower court decision could constitute a "new rule." *See, e.g., Gilmore v. Taylor*, 508 U.S. 333, 344 (1993) (concluding that a "rule announced" in a Seventh Circuit decision was "new" under the *Teague* framework). Thus, if Congress had said in § 2255(f)(3) that any new rule would reopen the one-year limitations period, then under *Teague* as understood in 1996, lower court rulings could have triggered § 2255(f)(3). Instead, Congress's language in § 2255(f)(3) triggers new filing periods only when rights are "newly recognized by the Supreme Court," which reflects that Congress intended for new filing periods to be available in fewer instances than whenever a new rule in the *Teague* sense is announced. This lends credence to the conclusion that Congress's choice of the term "right" rather than "rule" in § 2255(f)(3) was also a deviation from the *Teague* framework intended to limit application of § 2255(f)(3).

If Congress intended for "right" and "rule" to have different meanings, as the foregoing analysis suggests, there is good reason to conclude that "right" should be interpreted as a broad principle rather than as a narrow application of a principle to a particular set of facts or to a particular statute. To begin with, the terms "right" and "rule," as generally understood, have distinct meanings. A "right," as already noted, is generally understood to mean a protected interest that one may claim against another,[13] whereas a "rule" is generally understood to mean a principle that is a statement of a legal right as applied to a particular set of facts.[14] This

---

[13] *See supra*, n.5.

[14] *See, e.g., Webster's Third New International Dictionary* 1986 (1993) (defining "rule" as a "legal precept applied to a given set of facts as stating the law applicable to a case"); *Black's*

understanding accords with the Supreme Court's use of "rule" in the *Teague* framework. For example, in *Johnson*, the Supreme Court applied a broad right—the right to fair notice of prohibited conduct—to a particular statute, and as a result, announced a new *rule* made retroactive under *Teague*, namely that the ACCA residual clause is unconstitutional. *See Johnson*, 135 S. Ct. at 2556-57, 2563. Thus, if a "rule" is a narrow application of a legal right, and if "rule" and "right" have different meanings, then under a plain reading of § 2255(f)(3), the term "right" refers to a general protected interest that a defendant may claim rather than a particular application of that protected interest to a particular set of facts. Under this reading of the statute, § 2255(f)(3) does not apply to defendant's case because the Supreme Court in *Johnson* did not recognize a new right, but instead applied a well-settled right to a particular statute, and therefore announced a new rule.

As already noted, the Supreme Court and the Fourth Circuit have not yet grappled with the ambiguity of the term "right" in § 2255(f)(3).[15] Nor has any decision of another court been found that adequately addresses the issue. The widespread inattention may have a simple explanation; when the Supreme Court announces a new rule made retroactive under the *Teague*

---

*Law Dictionary* 1529 (10th ed. 2014) (defining "rule" as "an established and authoritative standard or principle").

[15] Although the Fourth Circuit has not squarely addressed the ambiguity of the term "right" in § 2255(f)(3), it has noted that when determining whether the Supreme Court has issued a newly recognized right pursuant to § 2255(f)(3), *Teague* "is not controlling," although it is "instructive." *Hopkins*, 268 F.3d at 225 n.2. In this regard, the Fourth Circuit noted that under *Teague* a new rule is, in a certain sense, "a narrower concept than the initial recognition of [a] new right[]" pursuant to § 2255(f)(3) because the term "new rule" in the *Teague* sense is limited to new *constitutional* rules, whereas a new "right" pursuant to § 2255(f)(3) is not limited to new *constitutional* right, but also includes new statutory rights. *Id.*

framework, it usually also announces a new right,[16] and therefore, the distinction between a right and rule is not typically material to the application of § 2255(f)(3). Thus, in most instances it is unnecessary to resolve the ambiguity of the scope of the term "right" in § 2255(f)(3).

Importantly, however, with respect to the Supreme Court's recent decision in *Johnson*, the distinction between a right and a rule is material to the application of § 2255(f)(3). This is so because as already noted, the *right* in issue in *Johnson* was not a new right, but was instead the well-settled prohibition against unconstitutional vagueness in criminal statutes, whereas the application of that right resulted in a newly recognized *rule*, namely that the ACCA residual clause is unconstitutionally vague. *See Johnson* 135 S. Ct. at 2556, 2557 ("Our cases establish that the [g]overnment violates [the Due Process Clause] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.") (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)).[17] Thus, under a construction of the term "right" in

---

[16] For example, in *Miller v. Alabama*, the Supreme Court recognized a new Eighth Amendment *right* prohibiting the imposition of mandatory life without parole for juvenile homicide offenders, as well as a new *rule* applying that right to the particular statute in issue. 132 S. Ct. 2455, 2475 (2012). The holding in *Miller* was made retroactive under the *Teague* framework in *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016). There, the Supreme Court had no occasion to address the distinction between a right and rule because under the *Teague* framework, there is no material difference between a new right and a new rule. The significance of distinguishing between these term arises here only because Congress used the term "right" rather than the term "rule" in § 2255(f)(3).

[17] Although the right prohibiting unconstitutional vagueness in criminal statutes is well-settled, the Supreme Court's articulation of the vagueness doctrine is of little help when determining whether a statute is vague. Indeed, as thoughtful judges have long recognized, unconstitutional indefinites "is itself an indefinite concept." *Winters v. New York*, 333 U.S. 507, 524 (1948) (Frankfurter, J. dissenting). Commentators have also noted the indeterminacy of the language of the vagueness doctrine. *See, e.g.*, John Calvin Jeffries, Jr. *Legality, Vagueness, and the Construction of Penal Statutes*, 71 Va. L. Rev. 189, 196 (1985) ("The difficulty [in applying the vagueness doctrine] is that there is no yardstick of impermissible indeterminacy."); Anthony G. Amsterdam, Note, *The Void-for-Vagueness Doctrine in the Supreme Court*, 109 U. Pa. L. Rev.

§ 2255(f)(3) that distinguishes that term from the term "rule" as used in the *Teague* framework, the Supreme Court's decision in *Johnson* did not trigger a new one-year limitations period pursuant to § 2255(f)(3) because that decision simply recognized a *new rule*, which was made retroactive in *Welch*, but did not recognize a *new right* within the meaning of § 2255(f)(3), as the right asserted by the petitioner in *Johnson* was the well-settled right not to be convicted or sentenced pursuant to an unconstitutionally vague law. In this regard, the Supreme Court's decision in *Johnson* brings the ambiguity of the term "right" in § 2255(f)(3) to the surface, perhaps for the first time.

## B.

Of course, there are also compelling reasons *not* to read "right" and "rule" as taking different meanings in § 2255. As just discussed, the subtle distinction between a right and a rule is cast into sharp relief only because the Supreme Court's decision in *Johnson* constitutes a retroactive rule that is not rooted in the recognition of a new constitutional right. Indeed, before *Welch* the Supreme Court had never held that a new constitutional rule based on procedural due process principles constituted a substantive rule for purposes of retroactivity on collateral review. *See* Br. of Court-Appointed *Amicus Curiae* at 29, *United States v. Welch*, No. 15-6418. Thus, it is not implausible to suspect that Congress, when it enacted AEDPA, assumed that every new

---

67, 74 (1960) ("[V]agueness alone ... does not provide a full and rational explanation of the case development."). Indeed, some commentators have argued that many vagueness determinations have little to do with vague language and are best understood as resting on two independent constitutional requirements: (i) that "all crime must be based on conduct," and (ii) that "there must be a defensible and predictable correlation between the established meaning of a criminal prohibition and the conduct to which it is applied." Peter W. Low & Joel S. Johnson, *Changing the Vocabulary of the Vagueness Doctrine*, 101 Va. L. Rev. 2051, 2053 (2015).

retroactive rule under *Teague* would *always* announce a new right, and thus that the terms "right" and "rule" were essentially congruent.[18]

Of course, "the passage of time can undermine the premises behind a particular statute in ways that the enacting legislature did not expect." Nelson, *supra*, at 926-27. Here, *Welch* makes clear that if Congress enacted § 2255(f)(3) on the premise that every retroactive new rule would also recognize a new right, that premise is no longer intact. When such situations arise, one interpretative approach is to view the formula of words Congress enacted as set in stone and to apply the traditional canons of interpretation to the text of the statute. *See id.* at 927. Here, this approach, as reflected in the analysis articulated in Part II-A, *supra*, leads to the conclusion that § 2255(f)(3) categorically does not apply to claims arising under *Johnson.* An alternative interpretative approach is to "adjust" the understanding of the formula of words enacted so as "best to continue serving the mix of purposes" that Congress was trying to advance at the time of enactment. *See id.* at 927. Under this latter approach, there are sound reasons to conclude that the term "right" in § 2255(f)(3) should be construed to mean "rule" in the *Teague* sense.

For one, this construction avoids an anomalous result that would follow from the construction of § 2255(f)(3) articulated in Part II-A, *supra*. Specifically, under an interpretation of "right" that distinguishes that term from the term "rule" in the *Teague* sense, no defendant could bring a § 2255 motion relying on *Johnson* pursuant to § 2255(f)(3). Such a conclusion, though seemingly consistent with the text of the statute, would be at odds with spirit of the Supreme Court's decision in *Welch*, which has the effect of enabling prisoners sentenced under

---

[18] Of course, any assumption regarding what Congress knew when enacting a law is suspect. Indeed, given the length of some laws passed in recent years, it is dubious that members of Congress even know the content of the laws they enact. In this regard, a variation of a familiar idiom is apropos: Never assume anything, because it makes an ass out of you and me—and Congress. *Cf. Sun v. District of Columbia Government*, 133 F. Supp.3d 155, 160 (D. D.C. 2015).

the ACCA residual clause before *Johnson* was decided to bring collateral attacks on their sentences on the basis of *Johnson*. *See Welch*, 136 S. Ct. at 1268. Indeed, it could be argued that the Supreme Court in *Welch* rejected by implication a construction of the term "right" that precludes the effective vindication of most § 2255 motions premised on *Johnson*[19] in favor of a construction that equates the term "right" with the term "rule" in the *Teague* sense.

In this regard, the result in *Welch* comports only with an interpretation of § 2255(f)(3) that takes the term "right" to mean "rule" in the *Teague* sense. In *Welch*, the petitioner had been sentenced pursuant to the ACCA residual clause in 2010, and did not file his § 2255 motion until December 2013, long after the expiration of the general one-year limitations period set forth in § 2255(f)(1). *See id.* at 1262-63. Thus, in *Welch*, the petitioner's § 2255 motion was timely only if petitioner was relying on § 2255(f)(3).[20] Importantly, the Supreme Court in *Welch* made no mention that petitioner could not rely on § 2255(f)(3) pursuant to *Johnson*. Thus, although the Supreme Court in *Welch* did not squarely address the issue, the result reached in *Welch* rests on the premise that once *Johnson* was made retroactive, a new one-year statutory period began to run pursuant to § 2255(f)(3); without this premise, the petitioner's § 2255 motion would have been untimely. Accordingly, it appears that the Supreme Court in *Welch* rejected by implication

---

[19] Importantly, not all § 2255 motions premised on *Johnson* would necessarily be precluded under this construction of § 2255(f)(3), as such motions may well be timely pursuant to one of the other three provisions set forth in § 2255(f). Nonetheless, such a construction would significantly curtail the reach of *Johnson* and *Welch*.

[20] Although there are two other exceptions to the general one-year limitations period set forth in § 2255(f), it does not appear that either of these two exceptions applied to the petitioner in *Welch*. *See* 28 U.S.C. § 2255(f)(2) (providing an exception to the general one-year limitations period for up to one year following "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"); 28 U.S.C. § 2255(f)(4) (providing an exception to the general one-year limitations period for one year following "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").

the conclusion that the Supreme Court in *Johnson* did not recognize a new right for purposes of § 2255(f)(3).

Moreover, equating the term "right" in § 2255(f)(3) with the term "rule" in the *Teague* sense finds further support in the operation of § 2255(f)(3). Specifically, § 2255(f)(3) operates in connection with the *Teague* non-retroactivity doctrine insofar as a "newly recognized" right opens a new one-year statutory window for prisoners only "if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* In other words, the initiation of a new one-year limitations period pursuant to § 2255(f)(3) is a practical effect of a determination that under the *Teague* framework, a new rule announced by the Supreme Court is retroactive. For example, suppose at some point in the future, the Supreme Court holds, as defendant contends here, that the residual clause of § 924(c) is unconstitutionally vague based on the rationale of *Johnson*. If a court subsequently concludes that this new Supreme Court holding is retroactive under *Teague*, then pursuant to § 2255(f)(3), a new one-year statutory window would open for prisoners serving sentences for § 924(c) convictions so long as the term "right" means "rule" as used in the *Teague* sense. But if no court subsequently concludes that the new Supreme Court holding is retroactive under *Teague*— because it was dictated by precedent, namely *Johnson*—then prisoners convicted pursuant to the residual clause of § 924(c) would not be afforded a new one-year statutory window in which they could file § 2255 motions. Thus, if the term "right" in § 2255(f)(3) means "rule" in the *Teague* sense, then the scope of a "right" that is "newly recognized" can be determined by considering whether the right asserted by defendant, if squarely addressed and recognized by the Supreme Court, would be considered a "new rule" for purposes of retroactive application or would merely be considered a conclusion dictated by prior precedent.

In sum, it is appropriate here to construe the term "right" in § 2255(f)(3) to mean "rule" as that term is used in the *Teague* framework. Accordingly, the question presented is whether the rule that defendant asserts—that the residual clause of § 924(c) is unconstitutionally vague under the rationale of *Johnson*—is a "new rule" or whether it is "dictated by precedent." *Teague*, 489 U.S. at 301. In this regard, the Supreme Court has explained that a holding is not dictated by precedent "unless it is 'apparent to all reasonable jurists.' " *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)). Thus, if the rule asserted by defendant is dictated by precedent because that rule is apparent to all reasonable jurists, defendant may rely on the one-year limitations period triggered by *Johnson* pursuant to § 2255(f)(3). But if that rule is not so dictated by precedent, defendant may not rely on § 2255(f)(3).

## C.

As the government correctly contends, the rule asserted by defendant is not dictated by precedent because it is not apparent to all reasonable jurists that the decision in *Johnson* operates to invalidate the residual clause of § 924(c). Indeed, the only circuit that has squarely addressed the rule asserted by defendant concluded that *Johnson* does not invalidate the residual clause of § 924(c). *See United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (holding that the Supreme Court's decision in *Johnson* did not render the residual clause of § 924(c) unconstitutionally vague because that clause "is considerably narrower than the statute invalidated ... in *Johnson*, and because much of *Johnson*'s analysis does not apply to [the residual clause of § 924(c)]"). And although the Fourth Circuit has not squarely addressed the issue, it has noted in dictum that although "the Supreme Court held unconstitutionally vague the [ACCA residual clause], ... the [Supreme] Court had no occasion to review the ... residual

clause [of § 924(c)]." *United States v. Fuertes*, 805 F.3d 485, 499 n.5 (4th Cir. 2015). Similarly, the Fourth Circuit sitting en banc recently noted that it is unclear whether *Johnson* operates to invalidate the residual clause of § 924(c). *See United States v. Graham*, --- F.3d ---, No. 12-4659, 2016 WL 3068018, *1 n.1 (4th Cir. May 31, 2016) (en banc). Recent district court decisions also reflect uncertainty whether the rationale of *Johnson* operates to invalidate the residual clause of § 924(c), as there is some question whether the categorical approach, a necessary premise to the result reached in *Johnson*,[21] applies in the context of § 924(c).[22]

Moreover, the Supreme Court's recent decision to grant a petition for writ of certiorari to address whether *Johnson* and *Welch* extend to the United States Sentencing Guidelines ("U.S.S.G.") further supports a conclusion that the reach of *Johnson*'s rationale with respect to the U.S.S.G. and statutory provisions not addressed in *Johnson*—including the residual clause of

---

[21] *See Johnson*, 135 S. Ct. at 2557 (applying the categorical approach to the ACCA residual clause and explaining that "[u]nder the categorical approach, a court assesses whether a crime qualifies as a violent felony 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion' ") (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)); *see also* Low & Johnson, *supra* n.17, at 2103-04 (explaining that without the "categorical approach as its operating premise, the [Supreme] Court's vagueness analysis [in *Johnson*] would have been significantly different").

[22] In this regard, several courts have concluded that the categorical approach does not apply to the residual clause of § 924(c) in at least some contexts. *See, e.g., United States v. McDaniels*, --- F. Supp.3d 2015 ---, No. 1:15-cr-171, 2015 WL 7455539, at *2-4 (E.D. Va. Nov. 23, 2015) (holding that "the categorical approach does not apply on a pre-trial motion to dismiss an indictment, and therefore the question whether the commission of a particular Hobbs Act robbery qualifies as a § 924(c) crime of violence is properly submitted to a jury properly instructed as to the definition of a crime of violence set forth in § 924(c)(3)"); *United States v. Wells*, No. 2:14-cr-00280, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015) (relying on the reasoning of *McDaniels* to conclude "that the categorical approach does not apply with respect to a pretrial motion to dismiss charges brought under 18 U.S.C. § 924(c)"); *United States v. Monroe*, --- F. Supp.3d ---, No. 15-74, 2016 WL 270316, at *4 (W.D. Pa. Jan. 21, 2016) (same); *United States v. Church*, No. 1:15-CR-24-TLS, 2015 WL 7738032, at *5-6 (N.D. Ind. Dec. 1, 2015) (holding that the categorical approach does not apply to § 924(c)); *United States v. Checora*, --- F. Supp.3d ---, No. 2:14cr457DAK, 2015 WL 9305672, *2 (D. Utah Dec. 21, 2015) (same).

§ 924(c)—is not apparent to all reasonable jurists. *See Beckles v. United States*, --- S. Ct. ---, No. 15-8544, 2016 WL 1029080 (June 27, 2016).

In sum, the rule asserted by defendant—that the residual clause of § 924(c) is unconstitutionally vague under the rationale of *Johnson*—is not dictated by precedent, as it is not apparent to all reasonable jurists that the decision in *Johnson* operates to invalidate the residual clause of § 924(c). Accordingly, defendant's § 2255 motion must be dismissed as untimely because § 2255(f)(3) does not apply here.

### III.

Even assuming, *arguendo*, that the right asserted by defendant—that the residual clause of § 924(c) is unconstitutionally vague under the rationale of *Johnson*—is timely pursuant to § 2255(f)(3), defendant's § 2255 motion nonetheless fails because contrary to defendant's contention, neither of defendant's convictions pursuant to § 924(c) depend on the residual clause of § 924(c).[23] This is so because with respect to both convictions, at least one predicate offense— namely, murder—is a crime of violence pursuant to the force clause of § 924(c), which defines a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

In opposition to the conclusion reached here, defendant contends that the definition of murder pursuant to Va. Code § 18.2-32 does not, in a strict sense, entail the use or threatened use of physical force against another, as that statute can be violated by other means, such as "poison[ing]" and "starving." *Id.* In support of this contention, defendant relies on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012). There, the Fourth Circuit addressed whether a defendant's prior conviction under a California statute warranted a sentencing enhancement

---

[23] Although the government's motion to dismiss does not address the merits of defendant's § 2255 motion, it is appropriate to do so here.

pursuant to U.S.S.G. § 2L1.2 insofar as the prior crime had an element of "violent force."[24] *Id.* at

167. The California statute under which the defendant had been previously convicted required

proof that the defendant willfully threatened to commit a crime that "will result in death or great

bodily injury to another." *Id.* at 168 (citing Cal. Penal Code § 422(a)). The Fourth Circuit held

that the California offense was missing a "violent force" element, and therefore did not qualify as

a "crime of violence" for sentencing purposes because the threat of *any bodily injury*, "even

serious bodily injury or death," does not necessarily require the use of physical force, let alone

"violent force." *Id.* at 168-69. As an example, the Fourth Circuit noted that a defendant could

violate the California statute "by poisoning another, which involves no use or threatened use of

force." *Id.* (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

     Importantly, however, as several courts have recognized, the Supreme Court recently

rejected the rationale of *Torres-Miguel* in *United States v. Castleman*, 134 S. Ct. 1405, 1415

(2014).[25] At issue in *Castleman* was a " 'crime of domestic violence' " statute, which included as

an element " 'the use or attempted use of physical force.' " *Id.* at 1407 (quoting 18 U.S.C.

§ 921(a)(33)(A)(ii)). Just as defendant contends here, the defendant in *Castleman* argued that

"although poison may have forceful physical properties as a matter of organic chemistry, ... no

one would say that a poisoner [use]s force or carries out a purpose by means of force when he or

she sprinkles poison in a victim's drink." *Id.* at 1415. The Supreme Court squarely rejected this

---

[24] Specifically, § 2L1.2 defines "[c]rime of violence" as an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2.

[25] *See, e.g.*, *McDaniels*, 2015 WL 7455539, at *5 (explaining that *Castleman* implicitly rejected the reasoning of *Torres-Miguel*); *United States v. Clarke*, --- F. Supp.3d ---, No. JKB-15-503, 2016 WL 1110306, at *6 (D. Md. Mar. 22, 2016) (noting that *Castleman* "eroded" the reasoning of *Torres-Miguel*); *United States v. Walker*, No. 3:15cr49, 2016 WL 153088, at *5 n.15 (E.D. Va. Jan. 12, 2016) (same).

argument, reasoning that "[t]he use of force ... is not the act of sprinkling the poison," but "the act of employing poison knowingly as a device to cause physical harm." *Id.* The Supreme Court further explained that "it does not matter" that "the harm occurs indirectly, rather than directly," noting that under the defendant's reasoning, "one could say that pulling the trigger on a gun is not the 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* The Supreme Court's reasoning in *Castleman* applies here and requires rejection of defendant's argument based on the *Torres-Miguel* decision. Thus, contrary to defendant's contention, murder, as defined by Va. Code § 18.2-32, constitutes a crime of violence pursuant to the force clause of § 924(c).

In sum, even assuming, *arguendo*, that the right asserted by defendant—that the residual clause of § 924(c) is unconstitutionally vague under the rationale of *Johnson*—is timely pursuant to § 2255(f)(3), defendant's § 2255 motion still fails, as defendant's two convictions under § 924(c) do not depend on the residual clause of § 924(c) because with respect to both convictions, at least one predicate offense—namely, murder—is a crime of violence pursuant to the force clause set forth of § 924(c).

## IV.

Accordingly, the government's motion to dismiss must be granted, and defendant's § 2255 motion must be denied because that motion is untimely pursuant to § 2255(f)(3) and because defendant's § 924(c) convictions do not depend on the residual clause of § 924(c).

An appropriate Order will issue.

Alexandria, Virginia
July 25, 2016

/s/

T. S. Ellis, III
United States District Judge